**Electronically Filed
Intermediate Court of Appeals
CAAP-14-0000901
25-SEP-2015
08:49 AM**

NO. CAAP-14-0000901

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
EDISON C. LEGASPI, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 12-1-1322)

SUMMARY DISPOSITION ORDER
(By: Nakamura, Chief Judge, Foley and Leonard, JJ.)

Defendant-Appellant Edison C. Legaspi (**Legaspi**) appeals
from the Judgment Guilty Conviction and Sentence entered on June
10, 2014 (**Judgment**), by the Circuit Court of the First Circuit
(**Circuit Court**).[1] After a jury-waived trial, Legaspi was found
guilty of Kidnapping, in violation of Hawaii Revised Statutes
(HRS) § 707-720(1)(e) (2014),[2] and Abuse of Family or Household
Members, in violation of HRS § 709-906(1) and (5) (Supp. 2013).

---

[1]     The Honorable Colette Y. Garibaldi presided.

[2]     HRS § 707-720 provides, in relevant part:

    § 707-720  **Kidnapping.**  (1) A person commits the
offense of kidnapping if the person intentionally or
knowingly  restrains another person with intent to:
    . . .  . .
    (e)     Terrorize that person or a third person[.]
    (2)     Except as provided in subsection (3), kidnapping
            is a class A felony.
    (3)     In a prosecution for kidnapping, it is a defense
            which reduces the offense to a class B felony
            that the defendant voluntarily released the
            victim, alive and not suffering from serious or
            substantial bodily injury, in a safe place prior
            to trial.

On appeal, Legaspi raises a single point of error, contending that there was insufficient evidence that Legaspi possessed the requisite *mens rea*, *i.e.*, that he intentionally or knowingly restrained the complaining witness (**CW**) with the intent to terrorize her. Accordingly, Legaspi argues that his conviction for Kidnapping must be reversed under the due process and fair trial clauses of the United States and Hawai'i Constitutions.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Legaspi's point of error as follows:

The Hawai'i Supreme Court has held:

> [E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or a jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact. Indeed, even if it could be said in a bench trial that the conviction is against the weight of the evidence, as long as there is substantial evidence to support the requisite findings for conviction, the trial court will be affirmed.
>
> > "Substantial evidence" as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion. And as trier of fact, the trial judge is free to make all reasonable and rational inferences under the facts in evidence, including circumstantial evidence.

State v. Matavale, 115 Hawai'i 149, 157-58, 166 P.3d 322, 330-31 (2007) (citation omitted); see also State v. Kiese, 126 Hawai'i 494, 502, 273 P.3d 1180, 1188 (2012).

In order to convict Legaspi of Kidnapping, the State was required to adduce, *inter alia*, substantial evidence that Legaspi intentionally or knowingly restrained CW with the intent to terrorize her. Viewing the evidence in the light most favorable to the prosecution, we conclude that there was substantial evidence to support the Circuit Court's findings of fact, including evidence supporting the requisite *mens rea*.

The CW testified, *inter alia*, that after entering their bedroom and locking the door,[3] Legaspi initiated a conversation about their adult daughter and became upset. Legaspi grabbed CW, put her on the floor, sat on her legs, pulled her hair, and punched her in the face. CW started screaming and felt pain. Legaspi then pulled her up to the bed, by pulling her hair and dragging her, and flipped her over. Legaspi then put an ointment on her face, where it was injured, said he was sorry and told her that she "cannot go out anymore." Legaspi told CW she needed to stay in the room for a week or two so that nobody could see her bruised, swollen face. CW testified that she felt "numb, blank, pain, scared." Legaspi restrained CW by tying her hands behind her back with a white luggage belt, and then attempted to tie her leg or legs with a black luggage belt. CW testified that she was just screaming and Legaspi told her, "This is what you deserve" and "Now you suffer." He then put a cloth in her mouth. CW said she gagged and felt like vomiting. Legaspi pulled the rag out and she screamed some more.

At that point, CW saw a small folding knife that Legaspi kept in his waistband and tried to grab the knife, while still screaming; CW was able to loosen her hands; they wrestled for the knife on the bed. Legaspi got the knife back and opened it and said, "That's it." At that point, the three men who lived downstairs in the same house then entered the room. CW told them Legaspi had a knife. They left and, according to CW, Legaspi again locked the door. A few minutes later, two firemen knocked at the door. CW got up and opened the door and Legaspi made no attempt to stop her.

Legaspi testified, *inter alia*, that he was so upset about the conversation about the daughter, he punched his wife mistakenly, that he did not mean to punch her, and that it was a reflex. He further testified that, when he hit her, he was in a panic, and "couldn't think already." He said he did not know

---

[3]     Legaspi and CW shared a rented room in a house belonging to a third party. Legaspi testified that he locked the door to ensure that their conversation was private.

what he was thinking when he decided to grab the luggage strap to tie up her hands. They talked about Halawa prison, that he might have to go back to prison if "they" saw her. Legaspi claimed that he was going to show CW "how the kidnapping is" and she willingly gave him her hand. He admitted tying her hands together behind her back, but stated that she agreed to it. He denied pulling her hair and wondered why she was calling for help on him. He said he did not have a plan, but the situation "just happened just like that." After CW struggled for his knife, the button on the knife got pushed and the knife opened; CW panicked and yelled again. Legaspi testified that, at that point, when "the guys went broke the door, I gave them the knife right away."

In its written Decision, the Circuit Court stated that it considered Legaspi's testimony, but found CW was more credible than Legaspi with respect to her testimony and her demeanor as a witness. Based on the trial evidence, the court found that the State met its burden of proof beyond a reasonable doubt with respect to the three essential elements of the offense of Kidnapping, including that Legaspi restrained CW, that he did so knowingly and intentionally, and that he did so with the intent to terrorize her.

The HRS do not provide a statutory definition of the term "terrorize." As Legaspi notes, this court has stated:

> Where there is no statutory definition, HRS § 701-104 (1993 Repl.)[4] applies, which provides the principles of construction for interpreting provisions of the Hawai'i Penal Code (Code). See State v. Cavness, 80 Hawai'i 460, 466, 911 P.2d 95, 101 (App. 1996) (HRS § 701-104 applies where criminal statute did not define a phrase). Pursuant to HRS § 701-104, provisions of the Code "shall be given a genuine construction, according to the fair import of the words, taken in their usual sense[.]" HRS § 701-104.

---

[4] HRS § 701-104 provides:

§ 701-104 Principles of construction. The provisions of this Code [Hawaii Penal Code] cannot be extended by analogy so as to create crimes not provided for herein; however, in order to promote justice and effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of the words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision.

4

> Applying the foregoing principles, we note that the ordinary and usual meaning of "terrorize" is "1: to fill with terror or anxiety: SCARE 2: to coerce by threat or violence[.]" Merriam-Webster's Collegiate Dictionary 1213 (10th ed. 2000).

State v. Rodriguez, CAAP-12-0000212, 3-4 (Hawai'i App. June 25, 2013) (footnote omitted), cert. denied, State v. Rodriguez, SCWC-12-0000212 (Hawai'i September 17, 2013).

Here, substantial evidence supports the Circuit Court's finding that Legaspi restrained CW with the intent to terrorize CW, consistent with the ordinary and usual meaning of terrorize, including Legaspi's above-referenced words and conduct.[5]

Accordingly, the Circuit Court's June 10, 2014 Judgment is affirmed.

DATED: Honolulu, Hawai'i, September 25, 2015.

On the briefs:

Taryn R. Tomasa
Deputy Public Defender
for Defendant-Appellant

Loren J. Thomas
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

*Craig H. Nakamura*
Chief Judge

*Daniel R. Foley*
Associate Judge

Associate Judge

---

[5] Legaspi also asserts that the Circuit Court erred in finding that the CW began to vomit, as opposed to felt like vomiting. This distinction is inconsequential under the circumstances of this case.